IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 6, 2021 Session

**O'NEAL JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 08-05447          Chris Craft, Judge**
_____

**No. W2020-00638-CCA-R3-PC**

O'Neal Johnson, Petitioner, appeals from the post-conviction court's denial of post-conviction relief. After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Lance R. Chism (on appeal), and Benjamin Wilkins (at hearing), Memphis, Tennessee, for the appellant, O'Neal Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural and Factual Background**

Petitioner was indicted for attempt to commit first degree murder of Willie Burdett ("the victim") and for felony reckless endangerment of Quincy Woods. The jury found Petitioner guilty of the lesser-included offense of attempted second degree murder and acquitted him of reckless endangerment. The trial court sentenced Petitioner to serve twenty years in prison as a Range II multiple offender and ordered the sentence to be served consecutively to prior sentences for rape of a child and contempt of court. Petitioner appealed his conviction, contending that the evidence was insufficient to prove he acted

knowingly and in the absence of a state of passion. This court affirmed the judgment. *State v. O'Neal Johnson*, No. W2011-00975-CCA-R3-CD, 2012 WL 2299457, at *1 (Tenn. Crim. App. June 18, 2012).

## Attempted Murder Case

We have summarized the factual background from the direct appeal opinion as follows:

On December 3, 2007, Petitioner heard that his fiancée was having an affair with the victim.[1] Petitioner drove to Methodist Laundry, where the victim was employed as a truck driver, and confronted the victim as he sat in the passenger seat of a "bob truck." During the multi-day jury trial, the State introduced several witnesses to the shooting. Mr. Woods, the driver of the bob truck, told the victim that someone was approaching the truck. The victim recognized Petitioner as he came around to the passenger side. When the victim opened the door, Petitioner said, "I heard you was F'ing my girlfriend, and I'm going to kill you." The victim testified that he saw Petitioner "had a gun in his waistband and tried to close the door." When Petitioner prevented the victim from closing the door, the victim pushed the door open, jumped from the truck, and ran toward the Methodist Laundry building. As he ran, he "heard 'a couple' of shots and was shot in his left leg." After entering the building, he was shot in the right shoulder. The victim stated that "he kept running until he was shot again in his right leg, which broke" causing the victim to fall to the floor. *Id.*

Mr. Woods testified that the first shot was fired while the victim was in the passenger's seat and Mr. Woods was seated about a foot away. He said that the victim ran toward the building and that Petitioner ran after him and fired two more times and that he heard five or six more shots after Petitioner followed the victim into the building. Mr. Woods testified that he had never seen the victim "with any sort of weapon." *Id.* at *2.

Petitioner's fiancée testified that "she had been in a relationship with [Petitioner] for five years and had been living with him for two years at the time of the shooting." She said that she worked at Methodist Laundry and that Petitioner usually drove her to work in her silver Mercury Sable. *Id.* at *3. On the day of the shooting, she discovered through her manager that some of her co-workers put a note about her by the machine where Ms. Jackson worked. Around 11:00 a.m., Petitioner arrived at Methodist Laundry to eat lunch with his fiancée. While the couple was seated in the vehicle, Ms. Jackson drove up to the

---

[1] Because Petitioner, in a separate case, was convicted of the rape of his fiancée's twelve-year-old daughter, who shares her mother's last name, we will not use the name of Petitioner's fiancée in this opinion.

driver's side, got out of her car, and asked Petitioner if he knew that his fiancée was having a sexual relationship with the victim. Petitioner's fiancée denied the accusation. When she returned from her lunch break, she informed her supervisor about what had happened. *Id.* at *4.

Randy Drake, a Methodist Laundry employee, knew Petitioner because Petitioner had previously been employed by Methodist Laundry. He saw the bob truck enter the parking lot followed by a silver vehicle that Petitioner typically drove when he picked up his girlfriend after work. Mr. Drake said that Petitioner "had an 'automatic weapon' of about three or four inches in his hand." He said that his view of the passenger side of the truck was obstructed but that he heard three or four shots and then saw Petitioner exit the building, get in his vehicle, and drive away. "Mr. Drake then went inside and put a tourniquet on the victim's leg." *Id.* at *3.

Samuel Noe, a Methodist Laundry employee, witnessed the shooting inside the building. He said that "he heard approximately six shots fired" and saw Petitioner "wearing a hoodie, holding his arm out with a small handgun and shooting toward the back of the building." *Id.* at *4.

Five Memphis Police Department (MPD) officers testified at trial. MPD Officer Jason Gallardo testified that he was the first law enforcement officer to arrive at the crime scene. He said that he "observed bullet casings from the door leading up to where the victim was lying on the ground." MPD Patrolman Jeffrey Garey collected and tagged evidence at the crime scene. Patrolman Garey testified that he collected fifteen spent nine millimeter bullet casings and four bullet fragments. He said that one casing was found outside the building, one on the door jamb, and the rest inside the building. *Id.* at *5.

Tennessee Bureau of Investigation Special Agent Shelly Betts testified as a forensic science expert in firearms identification. Agent Betts received an envelope containing fourteen casings and five bullet fragments. She determined they were all fired from the same type of weapon, a nine millimeter Glock semi-automatic pistol. *Id.* at *6.

Paramedic Daryl McConnell testified that he found the victim alert but with early symptoms of shock when he arrived on the scene. He cut off the victims clothing and immediately began to treat the victim. He said that there was evidence of an entry wound in the back of the victim's leg and that his femur was broken and shattered. Mr. McConnell found two entry wounds in the victim's left thigh and one entry wound in his right upper back. He said that injury to the femur can result in a fatal severing of the femoral artery and that the gunshot to the shoulder could have deflected to the heart, lungs, or spine and resulted in death. *Id.* at *5.

Petitioner testified that he heard the victim was having an affair with his girlfriend and that he went to Methodist Laundry to talk to the victim. Petitioner said that the victim opened the door a little and that he asked the victim if he was "messing with" his girlfriend. Petitioner testified that the victim denied the relationship and attempted to shut the door. Petitioner said that his arm "was caught in the door" and that a struggle ensued. He said that the victim jumped out of the truck and struck him three times in the face. Petitioner said that he noticed that the victim had a gun and that the two wrestled over the gun and it went off. Petitioner said that he gained control of the gun and that the victim ran. Petitioner said that he pursued the victim and testified, "[I] 'fired up in the air, boom, boom, and I think when I fired it came down,' and that was when the victim was injured in his right leg and his shoulder." *Id*. at *7.

## Rape of a Child Case

The rape of a child case and this attempted homicide case were both pending at the same time. A different attorney from the Public Defender's Office represented Petitioner in each case. A single mental evaluation of Petitioner was ordered by the trial court for both cases. The twenty years settlement offer made by the State was for the settlement of both cases. Petitioner testified at the post-conviction hearing in this case that his fiancée and the victim conspired to artificially inseminate his fiancée's twelve-year-old daughter to get her pregnant to frame Petitioner for rape of a child to get Petitioner out of the way so they could be together. The post-conviction court stated the following about what it called the "unique procedural facts" of the petition for post-conviction relief:

> [P]etitioner was indicted for the December, 2007 attempted [m]urder [f]irst [d]egree of the victim [] who was shot several times but survived. That shooting is the subject of this petition. He refused to surrender himself to the police, and was not arrested until September 11, 2008, nine months later. During this time, it was discovered that the [twelve]-year-old daughter of his fiancée was pregnant. She revealed that she had been forced to submit to intercourse with [P]etitioner several times, and when the baby was born, DNA showed that [P]etitioner was in fact the father of her child. He was then indicted for [r]ape of a [c]hild as well, and Assistant[] Public Defender [] was appointed to represent him on both indictments. [P]etitioner was extended a 20-year offer to settle both cases, but refused to choose between the State's offer to settle both cases or a jury trial on both cases, even though given several continuances for him to make that election.

- 4 -

**Petition for Post-Conviction Relief**

Petitioner filed a timely pro se petition for post-conviction relief on May 31, 2013, claiming that the State failed to comply with the statutory notice requirements for enhanced punishment, that the trial court improperly enhanced the sentence based on factors not found by the jury, and that he received the ineffective assistance of counsel at trial because counsel: (1) failed to confer with him without delay and as often as necessary in order to elicit matters of a defense; (2) failed to adequately prepare him for trial; (3) failed to investigate the facts and circumstances of his case; and (4) failed to object to his sentence being enhanced. The post-conviction court appointed counsel. On September 3, 2013, the first appointed counsel was allowed to withdraw, and new post-conviction counsel was appointed. An amended petition, which was filed on July 3, 2018, incorporated all issues raised in the pro se petition and also alleged that trial counsel was ineffective for: (1) "failing to develop a proper trial strategy in cooperation with Petitioner"; (2) failing to call Ms. Jackson as a witness; and (3) failing to file mitigating factors prior to sentencing hearing. The amended petition also claimed that appellate counsel was ineffective for failing to appeal the sentence.

**Issues Preserved on Appeal**

Although Petitioner raised numerous claims in the post-conviction court, he only raises four claims on appeal. Petitioner claims that he received ineffective assistance of counsel because trial counsel failed to adequately investigate Petitioner's physical and mental health issues and failed to call witnesses needed for his defense. Petitioner also claims that appellate counsel was ineffective because counsel failed to challenge his sentence on direct appeal. Finally, Petitioner claims that he is entitled to a second post-conviction hearing based on his post-conviction counsel's deficient performance. We will limit our discussion of the evidence presented at the post-conviction hearing to that which is germane to the issues raised on appeal.

**Post-Conviction Hearing**

Petitioner testified at the first hearing held on December 17, 2018. Petitioner said that he was diagnosed with schizophrenia and intellectual disability in 1993. He said that he was not taking his medications during the time of his trials. He said that he told counsel in both the rape case and attempted homicide case about his diagnosis and said that both counsel were aware of his condition "[d]ue to my behavior in court and stuff, that I was going through, I had – I think I threatened to kill the prosecutor" at a plea hearing for both cases.

Petitioner said that counsel advised him that the prosecution made a plea offer of twenty years at thirty percent service for both the rape of a child case and the attempted homicide case. A plea hearing was held on July 1, 2009, and Petitioner was advised that this was the last day to accept the plea offer. During the plea hearing, Petitioner refused to accept or to reject the plea offer, stating that he just wanted to go home. Petitioner said that he became angry because the prosecutor was smirking and smiling at him. In its March 27, 2020 Order Denying Petition for Post-Conviction Relief, the post-conviction court described what occurred during the plea hearing as follows:

> Petitioner then moved to "fire" his Assistant[] Public Defender [] which motion this court denied, and after he still refused to choose a trial or plea, this court set a date for his [r]ape of a [c]hild case to be tried to a jury. When [Petitioner] stepped down from the witness stand, he turned and called this court a "bitch" and after being found in summary contempt, turned to the prosecutor [] and stated words to the effect that "I'm going to kill you, bitch."

Petitioner testified at the post-conviction hearing that, on the day of the shooting, he went to talk to the victim about the relationship between the victim and Petitioner's fiancée. He said that the victim punched him in the face and pulled a pistol. Petitioner said that he took the pistol away from the victim and shot him in self-defense. On cross-examination, Petitioner agreed that the victim testified at trial that Petitioner approached the victim as he was exiting a vehicle, threatened to kill the victim for having an affair with Petitioner's fiancée, pointed a pistol at the victim and fired, and then chased the victim as he fled firing several more times at the victim. However, Petitioner claimed that the victim was the only witness who testified to the above-described events. Petitioner agreed that the victim was shot in the right shoulder and the right leg. He complained that trial counsel argued for a lesser-included offense rather than self-defense and denied that trial counsel was successful in obtaining a conviction for a lesser-included offense of attempted second degree murder.

Petitioner said that trial counsel told him that he had subpoenaed Ms. Jackson, the victim's girlfriend, and John McCarthey, the director of human resources at Methodist Laundry. Mr. McCarthey supervised Petitioner's fiancée, the victim, and the victim's girlfriend. He said that even though he was led to believe they were subpoenaed, they were not present for the trial.

Petitioner claimed that he should have been sentenced as a Range I offender. On cross-examination, Petitioner admitted that he had been convicted of two counts of robbery in 2003, reckless endangerment with a deadly weapon in 2002, and facilitation of a drug offense in 2002.

Trial counsel testified at the second post-conviction hearing held on March 1, 2019. Trial counsel had been employed by the Shelby County Public Defender's Office (PD's office) since 1995. He said that another attorney at the PD's office represented Petitioner in the rape of a child case. He estimated that he had tried around one hundred jury trials, including several first degree murder cases, at the time he represented Petitioner. He said that trial counsel in the rape of the child case had Petitioner undergo a general mental competency evaluation and that the evaluation showed that Petitioner was competent. He said that he did not see anything that, in his opinion, justified a diminished capacity defense. He said that he had no trouble communicating with Petitioner.

Trial counsel said that his trial strategy was to try to get the jury to convict Petitioner of attempted voluntary manslaughter based on the proof that the victim was having an affair with Petitioner's fiancée. He said that the fact that, after Petitioner initially shot the victim, he chased down the victim and fired several more times leaving a trail of spent shell casings made the strategy difficult.

Trial counsel said that he tried to get Petitioner to accept the plea offer. He described the facts of the rape of a child case as exceptionally strong based on DNA evidence. He said that he could not remember if he subpoenaed Ms. Jackson, but that, if Petitioner wanted her to testify, it was his customary practice to issue a subpoena. He said that he had discussions with Petitioner about testifying and explained that, if he did testify, the State could impeach him with prior convictions.

On cross-examination, trial counsel agreed that he remembered the passenger in the vehicle and another witness testified that Petitioner had a pistol in his hand when he approached the vehicle in which the victim was riding.

At the conclusion of the March 1, 2019 hearing, Petitioner asked to keep the proof open to allow him time to locate Ms. Jackson, Darlene Fulton, and MPD Sergeant Tutt, so they could be subpoenaed as witnesses. Petitioner then stated that he tried to locate John McCarthy, but Mr. McCarthy was deceased. Petitioner also asked for time to hire a diabetic expert, apparently to show that elevated blood sugar levels and elevated blood pressure could have impacted his decision making in shooting the victim. Additional hearings were held on July 12, 2019, August 2, 2019, and August 23, 2019, to allow Petitioner an opportunity to locate witnesses. At each of these hearings, post-conviction counsel announced that he could not locate the witnesses or find an expert to testify. The proof was closed on August 23, 2019, after post-conviction counsel announced that he "had no expectation that our searches will be fruitful."

**Order Denying Petition for Post-Conviction Relief**

The post-conviction court entered a thorough and comprehensive order that addressed all issues raised in the petition and amended petition, making credibility findings, findings of fact, and conclusions of law as to each issue raised. The post-conviction court denied relief, and Petitioner timely appealed. We will address the post-conviction court's order as it relates to the issues raised by Petitioner on appeal in the analysis below.

## ANALYSIS

Petitioner claims that he received ineffective assistance of counsel based on trial counsel's failure to adequately investigate Petitioner's physical and mental health issues and to call witnesses needed for his defense and based on appellate counsel's failure to challenge his sentence on direct appeal. The State argues that the post-conviction court properly determined that Petitioner failed to prove any deficient performance on the part of trial counsel or appellate counsel and failed to show any prejudice. We agree with the State.

Finally, Petitioner claims that he is entitled to a second post-conviction hearing based on his post-conviction counsel's deficient performance. The State argues that post-conviction counsel did all that was required of him by Tennessee Supreme Court Rule 28 and that Petitioner is not entitled to a second post-conviction hearing. We agree with the State.

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2018). Petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.* Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-

conviction court]." *Fields*, 40 S.W.3d at 456. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

## Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688).

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

### *Investigation of Mental and Physical Health of Petitioner*

Petitioner claims that "trial counsel was ineffective for failing to adequately investigate Petitioner's physical and mental health issues." Trial counsel has a duty to "conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 933. "[A] court deciding an actual

- 9 -

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*

In its order denying relief, the post-conviction court found that Petitioner "was mentally evaluated by Dr. John Hutson" for the rape of a child case and the attempted homicide case. The court quoted the "results" from Dr. Hudson's evaluation:

> On March 11, 2009, I completed the evaluation of [Petitioner] on the charges of Rape of a Child and Attempted Murder — First Degree pursuant to your order. At that time, he understood the nature of the legal process, he understood the charges and the potential consequences of the charges and he seemed capable of assisting counsel and participating in his defense.

The post-conviction court found that trial counsel "testified that he had no reason to suspect that [P]etitioner had any mental illness, and so no reason to have [P]etitioner reexamined after that had already been requested and an examination had been performed." Trial counsel also testified that he had no difficulty in communicating with Petitioner.

The post-conviction court found that Petitioner's mental illness claim was "totally unsupported by any other proof offered at the trial, the sentencing hearing[,] or the hearing on this petition." The court noted that the post-conviction hearing was continued three times "to allow [P]etitioner to call an expert on diabetes, but none was ever called." The court found Petitioner's testimony concerning his mental illness not to be credible and that the issue was without merit. The evidence does not preponderate against the post-conviction court's factual finding or credibility finding, and we agree with the court's conclusion.

### Failure to Call Witnesses

Petitioner claims that "trial counsel was ineffective for failing to present important witnesses at trial." Specifically, Petitioner claims that he asked trial counsel to subpoena Gloria Jackson, Darlene Fulton, and John McCarthy. Petitioner claims that "Ms. Jackson's testimony would have been beneficial to the defense in establishing [P]etitioner's reaction when he heard about the affair." Petitioner claims that Mr. McCarthy fired his fiancée, the victim, Ms. Jackson, and fourteen other Methodist Laundry employees over the shooting.

Petitioner acknowledges that, in cases where a petitioner contends that trial counsel failed to present a witness in support of the petitioner's defense, the petitioner must present such witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither a trial nor an appellate judge can speculate as to whether that witness's testimony would have been favorable to the defense. *Id.* Therefore, the petitioner must "produce a material witness who . . . would have testified favorably in support of his defense if called [at trial]. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*." *Id.* at 758.

The post-conviction court gave Petitioner multiple opportunities to produce additional fact or expert witnesses. Post-conviction counsel stated that he attempted to locate Gloria Jackson and other witnesses but was unable to find them and that Mr. McCarthy had passed away. Petitioner's family was unable to obtain an expert on diabetes to testify on behalf of Petitioner. The court noted that, although Ms. Jackson could have testified about the victim's affair with Petitioner's fiancée, the victim admitted to the affair, and Petitioner testified to his state of passion. The court found that Petitioner failed to show or explain how the testimony of Ms. Jackson, Ms. Fulton, Sergeant Tutt, or Mr. McCarthy would have benefitted Petitioner. The court found that Petitioner failed to prove deficient performance on the part of trial counsel or prejudice to Petitioner. We agree.

### Failure to Raise Sentencing on Appeal

A criminal defendant has the right to effective assistance of counsel on direct appeal. *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995) (citing *Evitts v. Lucey*, 469 U.S. 387 (1985)). The test devised in *Strickland* for ineffective assistance of counsel applies to both trial and appellate counsel. *Id.* That is, a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was deficient in failing to adequately pursue or preserve a particular issue on appeal and that, absent counsel's deficient performance, there was a reasonable probability that the issue "would have affected the result of the appeal." *Id.* at 596-97.

When a petitioner alleges that appellate counsel was deficient for failing to raise an issue on direct appeal, the reviewing court must determine the merits of that issue. *Id.* at 597. "Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. Indeed, experienced advocates have long emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Carpenter v. State,* 126 S.W.3d 879, 887 (Tenn. 2004). (internal quotation marks and citations omitted). "The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion[,]" and "appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference." *Id.* "Obviously, if an issue has no

merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* Further, when an omitted issue is without merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal and cannot prevail on an ineffective assistance of counsel claim. *Id.* at 887-88.

Petitioner claims that appellate counsel should have challenged the sentence on direct appeal because "the trial court sentenced Petitioner at the very top of the Range II spectrum and ordered this sentence to be served consecutive to his other sentences." Petitioner argues that the effective forty-five-year sentence was not "justly deserved in relation to the seriousness of the offense" and was "greater than that deserved for the offense committed" under Tennessee Code Annotated sections 40-35-102(1) and -103(2) (2018).

Although the record in this appeal does not include the transcript of the sentencing hearing, Petitioner specifically references volume 8 of the "Archived Record" in *State v. O'Neal Johnson*. Therefore, to determine the merit of the claim that appellate counsel was deficient in failing to challenge the sentence on direct appeal, we take judicial notice of the record from the direct appeal, which includes the transcript of the February 17, 2011 Sentencing Hearing. *See O'Neal Johnson*, 2012 WL 2299457, at *1.

The trial court made extensive findings at the sentencing hearing. The trial court found that Petitioner had been "convicted of a facilitation to commit the sale of possession of cocaine with intent to sell, which is a D felony occurring October 12[], 2002" and "convicted of two robberies occurring July 31[] , 2003." The court used one of the two robberies, along with that D felony facilitation conviction, to find that Petitioner "was a range two offender, looking at 12 to 20 years in the Department of Correction on this Class B felony."

The trial court considered and weighed the enhancement factors. The court found that Petitioner had four prior felony convictions in addition to those necessary to establish the sentencing range, that Petitioner had previously failed to comply with conditions of a sentence based on his violations of probation, and that Petitioner employed a firearm during the commission of a violent felony. The trial court gave great weight to his prior record in addition to that necessary to establish the range, including a robbery, rape of child, a forgery and reckless endangerment with a weapon. The trial court found that, because of Petitioner's "horrible record and record of violent offenses against children and adults with those three factors, one, eight and nine, giving factor one great weight and nine a good amount of weight, [the court] sentence[s] him to [twenty] years in the Tennessee Department of Correction."

- 12 -

The trial court found that Petitioner's record of criminal activity was extensive and that Petitioner was a dangerous offender based on his criminal record, including numerous violent offenses and "his behaviors in the courtroom." The trial court found that the circumstances surrounding the attempted murder were aggravated, stating that the offense occurred "in broad daylight and [Petitioner] with a firearm chased another man through a factory, firing repeatedly at the man to kill him." Finally, the trial court found that "confinement for an extended period of time is necessary to protect society from [Petitioner]" and that Petitioner had shown an "unwillingness to lead a productive life" and had resorted "to criminal activity in furtherance of an anti-societal lifestyle." Accordingly, the trial court ordered the sentence to be served consecutively to the rape of a child sentence.

The post-conviction court found that the State filed a "Notice of Intent to Seek Enhanced Punishment" on August 10, 2010, several months before the beginning of trial on November 9, 2010. According to the post-conviction court, the notice listed convictions for rape of a child, two counts of robbery, facilitation of possession of a controlled substance with intent to sell, a misdemeanor theft and a forgery, and the court found that the notice set out the dates and counts of conviction. The post-conviction court noted that the convictions for rape of a child were not prior felonies for enhancement purposes since those offenses occurred after the attempted homicide. The post-conviction court found that "[i]t was uncontested that [P]etitioner, at the time of the instant offense, had at least one prior robbery conviction, a C felony, and a facilitation to possess cocaine under half gram with intent to sell, a Class D felony. Therefore, [P]etitioner was a Range II offender on the Class B offense of Criminal Attempt, to wit: Murder Second Degree."

The post-conviction court noted that Petitioner had an extensive criminal record in addition to that necessary to establish the sentence range and a "horrible record and record of violent offenses against children and adults" that could be used to enhance his Range II sentence to 20 years in the Tennessee Department of Correction.

The 2005 amendments to the Sentencing Act provided trial courts with broad discretionary authority in sentencing. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court's "within-range sentences that reflect a decision based upon the purposes and principles of sentencing" are reviewed under a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2018), Sentencing Comm'n Cmts.

"[T]he applicable standard of appellate review for a challenge to the imposition of consecutive sentences is abuse of discretion with a presumption of reasonableness[.]" *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013). Tennessee Code Annotated section 40-35-

115(b) (2011) establishes the criteria that a trial court may use to determine if sentences, that are not mandatorily required to be served consecutively, should be served concurrently or consecutively.  A trial court must only find one of the seven listed criteria in section 40-35-115(b) to order consecutive alignment of multiple convictions.  Here, the trial court found three: Petitioner was "an offender whose record of criminal activity [wa]s extensive," -115(b)(2); Petitioner was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high," -115(b)(4); and Petitioner was "sentenced for criminal contempt" -115(b)(7).

In Petitioner's direct appeal, appellate counsel raised a single issue concerning "the sufficiency of the evidence supporting his conviction for second degree murder, based primarily on his contention that the evidence is not sufficient to show that he acted knowingly or without adequately provoked passion." *O'Neal Johnson*, 2012 WL 2299457, at *1.  Appellant counsel was not called as a witness at the post-conviction hearing so neither the post-conviction court nor this court can speculate on the reasons appellate counsel did not raise the sentencing issue on appeal or what his testimony would have been. *Black*, 794 S.W.2d at 757.

The post-conviction court found, that after reviewing the sentencing hearing transcript, the "sentence was proper, strong enhancement factors entitled to great weight were present, [Petitioner] was properly found to be a dangerous offender, and that any further review by an appellate court of [P]etitioner's sentence would not have resulted in the sentence being overturned."  The post-conviction court "found the claim to be without merit for lack of a showing of prejudice to the [P]etitioner."  We agree.

**Ineffective Assistance of Post-Conviction Counsel**

The right to post-conviction counsel is statutory.  Tenn. Code Ann. § 40-30-107(b)(1) (2018).  There is no constitutional entitlement to the effective assistance of counsel in a post-conviction proceeding. *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)).  "[A] post-conviction petitioner does not stand in the same shoes as the criminally accused; therefore, performance of post-conviction counsel is not governed by the standard set forth in *Strickland*." *Id.* at 682.  "The Post-Conviction Procedure Act, when read together with our Supreme Court Rules, simply sets out the minimum standards for performance demanded of counsel in post-conviction cases." *Id.*

Tennessee Supreme Court Rule 28 outlines the procedures to be followed after a post-conviction petition is filed.  Post-conviction counsel is required "to review the pro se

petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims." Tenn. Sup. Ct. R. 28, § 6(C)(2). Rule 28(6)(C)(3) requires post-conviction counsel to certify that he or she (1) has "thoroughly investigated the possible constitutional violations alleged by petitioner . . . and any other ground that petitioner may have for relief"; (2) has "discussed other possible constitutional grounds with petitioner"; (3) has "raised all non-frivolous constitutional grounds warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law which petitioner has"; and (4) is "aware that any ground not raised shall be forever barred . . . and ha[s] explained this to petitioner." Tenn. Sup. Ct. R. 28, § 6(C)(3), app. C. Due process in the post-conviction context requires merely that the petitioner have "the opportunity to be heard at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)) (internal quotation marks omitted).

Post-conviction counsel in this case fulfilled the requirement of Rule 28. Counsel filed two amended petitions for post-conviction relief, raised all non-frivolous constitutional grounds, attempted for several months to locate the witnesses Petitioner wanted to call, guided Petitioner's testimony, and examined trial counsel. Post-conviction counsel filed the certification required by Rule 28(6)(C)(3). It is not clear from the record why appellate counsel was not called as a witness, but as we have previously discussed, we agree with the post-conviction court "that any further review by an appellate court of [P]etitioner's sentence would not have resulted in the sentence being overturned" and that the claim was "without merit for lack of a showing of prejudice to the [P]etitioner."

A petitioner under egregious circumstances may establish that he or she is entitled to a second post-conviction hearing based on the ineffective assistant of post-conviction counsel. *See Thaddeus Johnson v. State*, No. W2014-00053-CCA-R3-PC, 2014 WL 7401989, at *9 n.10 (Tenn. Crim. App. Dec. 29, 2014) (post-conviction counsel's "egregious violation(s) of Rule 28 might impermissibly violate the limited due process requirements for post-conviction proceedings so as to warrant a second post-conviction hearing"), *perm. app. denied* (Tenn. May 18, 2015); *Frazier*, 303 S.W.3d at 680 (the statutory right to counsel in a post-conviction case contemplates a conflict-free counsel); *House*, 911 S.W.2d at 714 (where, based on the ineffective assistance of post-conviction counsel, a post-conviction petitioner is denied an "opportunity to present proof and argument on the petition for post-conviction relief"). The circumstances of this case are in no way egregious, and Petitioner is not entitled to a second post-conviction hearing.

CONCLUSION

We affirm the judgment of the post-conviction court denying post-conviction relief.

_____
ROBERT L. HOLLOWAY, JR., JUDGE